# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRY DANA WEST,<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. 1:16-cv-01377-EPG<br><br>**FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

This matter is before the Court on Barry Dana West's ("Plaintiff" or "claimant") complaint for judicial review of an unfavorable decision of the Commissioner of the Social Security Administration regarding his applications for supplemental security income and disability insurance benefits. (ECF No. 1).The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF Nos. 6, 10).

At oral arguments on January 23, 2018, the Court heard from the parties and, having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, finds as follows.

**I.    Background**

Plaintiff filed an application for disability insurance benefits, alleging disability beginning April 25, 2012. An Administrative Law Judge ("ALJ") found the following severe impairments:

late effects of Cerebro-Vascular Accidents ("CVA"), chronic kidney disease stage III, Type II diabetes mellitus with diabetic nephropathy, obstructive sleep apnea, obesity, depressive disorder, and a history of alcohol abuse. Notwithstanding these severe impairments, the ALJ found that Plaintiff has a Residual Functional Capacity ("RFC") to perform light work as defined in 20 CFR § 404.1567(b), except with the following limitations: no ladders, ropes or scaffolds; occasional ramps and stairs; occasional balancing; frequent stooping, crouching, kneeling and crawling; he should avoid concentrated exposure to hazardous machinery and concentrated exposure to unprotected heights; work would be limited to simple, and defined in the DOT as SVP levels one and two, routine and repetitive tasks with only occasional changes in the work setting. (AR 18). The ALJ further found that jobs exist in significant numbers that the claimant can perform including office helper, hand packer and mail sorter.

It is undisputed that Plaintiff suffered from two strokes and has lasting brain damage. He stopped working after his first stroke, in April 2012. (AR 43). Furthermore, Plaintiff was born in December, 1960. Due to his age, both parties agree that if he is found limited to sedentary level work, he would be deemed disabled based on 20 CFR § 404, Subpart P, Appendix 2, Rule 201.14.

## II. The ALJ's Reasons for Giving Little Weight to the Opinion of Plaintiff's Treatment Physician

Plaintiff first argues that the ALJ erred in rejecting the opinion of his treating physician, Danielle Myers, MD. Dr. Myers submitted medical records stating, "Given multiple complications—I believe that patient will be permanently disabled." (AR 464). Dr. Meyers found that "[d]ue to the severity of his cerebrovascular accident and the kidney damage" Plaintiff had an incapacitating disease or illness, (AR 387), and could never lift more than 10 pounds, never carry more than 10 pounds, never climb or balance. (AR 507-508).Plaintiff also had a poor ability to relate to co-workers, deal with public, use judgment, deal with work stress, maintain attention concentration, understand, remember and carry out simple job instructions, and suffered from "memory loss, forgetfulness, anxious, inability to manage high level of stress." *Id.* The ALJ gave Dr. Myers' opinion little weight. (AR 24).

Regarding the opinions of treating physicians, the Ninth Circuit has explained:

> By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians. *See* 20 C.F.R. § 404.1527. If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." *Id.* § 404.1527(d)(2). If a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the Administration considers specified factors in determining the weight it will be given. Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. *Id.* § 404.1527(d)(2)(i)-(ii). Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians. *Id.* § 404.1527(d)(1)-(2). Additional factors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; and "[o]ther factors" such as the degree of understanding a physician has of the Administration's "disability programs and their evidentiary requirements" and the degree of his or her familiarity with other information in the case record. *Id.* § 404.1527(d)(3)-(6).

*Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). To reject the uncontroverted opinion of a claimant's physician, the ALJ must present clear and convincing reasons for doing so. *Rodriguez v. Bowen*, 876 F.2d 759, 761–62 (9th Cir. 1989); *Montijo v. Secretary of Health & Human Services,* 729 F.2d 599, 601 (9th Cir.1984). To reject the opinion of a treating physician that conflicts with that of an examining physician, the ALJ must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989).

The ALJ gave the following reasons for giving the opinion of Dr. Myers little weight:

> Although Dr. Myers had a lengthy treating relationship with the claimant, she fails to include any discussion of the findings which support her opinion. In addition, her reference to the specialists' treatment notes and Mr. Cox's physical therapy evaluation is vague

3

and ambiguous because she does not identify specific findings to support her opinion. In fact, her opinion is inconsistent with the findings included in the specialists' treatment notes and Mr. Cox's physical therapy evaluation. For example it is inconsistent with the renal specialist's generally unremarkable findings during physical examinations and renal function tests. It is also inconsistent with Mr. Cox's findings that the claimant had normal range of motion, normal muscle strength, and could ambulate independently. It is further inconsistent with Dr. Myers's own generally unremarkable clinical findings and observations during her examinations of the claimant, including her findings that the claimant had a normal gait and no neurological deficits. (Exhibit 5F/21-23). It is also inconsistent with the claimant's own statements that he can lift more than ten pounds and his activities of daily living, including his ability to clean the dog kennels, go fishing, ride a stationary bike for one hour, and perform household chores. Because her opinion is inconsistent with the objective evidence in the record, the limitations set forth in Dr. Myers's opinion appear to be based on the claimant's subjective complaints as opposed to objective evidence. For these reasons, Dr. Myers's opinion is given little weight.

There are several statements throughout the treatment records by Dr. Myers that the claimant is 'disabled' or unable to work for specified periods of time (Exhibits 2F; 5F/10, 31, 33, and 46; and 10F). As a whole these opinions by Dr. Myers are given little weight. Some of these opinions were intended as temporary assessments of or limitations on the claimant's activities in order to evaluate and treat his conditions. In addition, the opinions are overall inconsistent with Dr. Myers's own generally unremarkable clinical findings and observations during her examinations of the claimant, including her findings that the claimant had a normal gait and no neurological deficits (Exhibit 5F/21-23). Furthermore, these opinions are vague as to specific functional limitations and how those specific limitations affect the claimant's ability to perform any work. Moreover, under CFR §404.1527, the final responsibility for a determination of disability under the Social Security Act is an issue specifically reserved to the Commissioner. For all of these reasons, the above described opinions by Dr. Myers are given little weight.

(AR 24-25).

The ALJ's reasons are sufficiently specific. The question is whether they are legitimate and supported by substantial evidence.

Some of these reasons are clearly not legitimate. To begin with, Dr. Myers gave the opinion that Plaintiff should "never" lift or carry more than 10 pounds. (AR 207). Plaintiff wrote in his function report "Not comfortable lifting even 10-15 lbs." (AR 227). These two statements are consistent--not inconsistent as the ALJ states.

The ALJ's conclusion that Dr. Myers' opinion was "inconsistent with Mr. Cox's findings

4

that the claimant had normal range of motion, normal muscle strength, and could ambulate independently" is neither an accurate summary of Mr. Cox's findings is nor a legitimate reason to disregard Dr. Myers' opinion. Although Richard R. Cox, a physical therapist, notes that Plaintiff had a range of motion within functional limits and adequate strength, he also provided the following findings that were consistent with Dr. Myers' opinion: "on dynamic standing balance has limitation where he occasionally loses his balance and begins to fall but does catch himself"; "[t]he patient has an inability to balance on his toes and has a requirement for moderate assistance, ambulating backwards"; "the patient's larger issue would be maintaining balance in moving these items and weights and objects safely"; "I do not believe the patient should climb or balance on any unsteady surfaces at any time;" and "any items that were sharp or required precise placement would present a potential difficulty with coordination and balance." (AR 502). Especially where one of Plaintiff's primary complaints is a lack of balance following his two strokes, (AR 44, 502), the ALJ's reference to limited normal physical findings not effected by balance, while omitting Mr. Cox's negative findings on the issue of balance, does not provide a legitimate basis to discount Dr. Myer's opinion.

Moreover, the fact that Dr. Myers at times gave the opinion that Plaintiff is disabled is not a legitimate reason to discount her opinion as a whole. While the ALJ is correct that "the final responsibility for a determination of disability under the Social Security Act is an issue specifically reserved to the Commissioner," Dr. Myers provided very specific functional limitations consistent with her conclusion of disability. (AR 507-10). Moreover, Dr. Myers had been asked by the State of California to provide a doctor's certificate verifying disability, (AR 387), so she cannot be discounted merely because she gave that ultimate opinion upon request.

The ALJ's reasoning based on Plaintiff's daily living activities also does not appear legitimate or supported by substantial evidence. The ALJ opined, "It is also inconsistent with the claimant's . . . activities of daily living, including his ability to clean the dog kennels, go fishing, ride a stationary bike for one hour, and perform household chores." (AR 25). Again, some of this information is incorrect. For example, Plaintiff and his wife listed fishing as something he *cannot* do any longer, so it can hardly be used as an activity demonstrating his lack of disability. (AR

5

223-44). Similarly, his wife said he *cannot* do outside chores, he gets dizzy when he picks up a dust pan, and yard work makes him very dizzy. (AR 245). He is "on exercise machine 20 mins," not one hour, and in any event is a stationary back not requiring balance. (AR 244).

Furthermore, the listed activities do not contradict Dr. Myers' opinion. None of those activities show him lifting greater than 10 pounds; relating with co-workers; dealing with the public; understanding, remembering and carrying out job instructions; or otherwise contradicting a limitation described by Dr. Myers. Moreover, the claimant and his wife's description of his activities certainly described diminished daily activities as a result of his strokes. For example, Plaintiff stated during testimony "I was walking up to six miles a day, but since the strokes, I don't walk. I bump into people. I don't go to stores because I knock people over in stores without knowing they're there. . . . I don't even hardly leave the house now." (AR 48). Similarly, he testified, "I like to do more exotic type meals and experiment with stuff, but since the stroke I look at directions, I get all confused. I confuse the ingredients or the amounts of it." (AR 52). Thus, this reason given by the ALJ is neither legitimate nor supported by substantial evidence.

Finally, the ALJ also opined, "In addition, the opinions are overall inconsistent with Dr. Myers's own generally unremarkable clinical findings and observations during her examinations of the claimant, including her findings that the claimant had a normal gait and no neurological deficits (Exhibit 5F/21-23)." (AR 25). It is true that Dr. Myers had some normal findings, including "balance and gait intact," "no motor weaknesses," coordination intact." (AR 417). Yet in the same record cited by the ALJ, Dr. Myers' notes reflect the following: "Nursing Comments: loss of vision in R. outer eye, loss of balance, exhausted"; "Had CVA—was hospitalized. After this, weak but no dizziness/visual defects. 6/24 "everything was leaning left" – went back into hospital—had repeat MRI of the head. Since then 'never cleared up.' Spots of confusion, memory loss. Family has noticed forgetfulness"; "Intracerebral hemorrhage Status: Chronic;" "limited visual field"; "concerning symptomatology"; and "highly recommend neurology consult." (AR 415-419). On another record, Dr. Myers reported "new onset of dizziness, now with visual field defect." (AR 408). Additionally, other objective tests support Dr. Myers' opinion. For example, the consultative examiner, Dr. Martin, performed tests that included the

following results: "Memory: Poor. Recalled 1 out of 3 words after a brief delay" and "The test results indicate that the claimant's ability to learn and recall new information is considered to be in the [im]paired range." (AR 511-513).

Dr. Myers' analysis and opinions were all formed in the context of treating Plaintiff for multiple strokes, and the objective evidence of brain damage is undisputed. A report of the MRI done in June, 2012, states, "the chronic findings include deep and pontine prior ___ distributed throughout the cerebral hemispheres, brainstem of his posterior fossa. Differential includes prior hemorrhage amyloidosis, vasculitis and potentially hypertension with previous hemorrhage. . . . CT scan of brain done on admission in the ER demonstrates an old right pontine CVA and multiple lacunar infarcts." (AR 281). While the Court does not purport to understand these highly technical terms, it is undisputed that there was objective evidence of substantial brain damage as a result of strokes, which was consistent with Dr. Myers findings. After a review of the record, the Court finds that the ALJ's reason for disregarding Dr. Myers' opinion based on an absence of objective evidence is also not supported by the record.

In conclusion, the Court finds that the reasons given by the ALJ for not crediting the treating physician, Dr. Myers', opinions were not legitimate reasons, supported by substantial evidence.

**III. The ALJ's Adverse Credibility Determination of Plaintiff**

Plaintiff next argues that the ALJ's Credibility Determination was legally deficient. According to the Ninth Circuit:

> An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.' " *Lingenfelter,* 504 F.3d at 1035–36 (quoting *Bunnell v. Sullivan,* 947 F.2d 341, 344 (9th Cir.1991) (en banc) (internal quotation marks omitted)). In this analysis, the claimant is *not* required to show "that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater,* 80 F.3d 1273, 1282 (9th Cir.1996). Nor must a claimant produce "objective medical evidence of the pain or fatigue itself, or the severity thereof." *Id.*

> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."[18] *Smolen,* 80 F.3d at 1281; *see also Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 883 (9th Cir.2006) ( "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."). This is not an easy requirement to meet: "The clear and convincing standard is the most demanding required in Social Security cases." *Moore v. Comm'r of Soc. Sec. Admin.,* 278 F.3d 920, 924 (9th Cir.2002).

*Garrison v. Colvin,* 759 F.3d 995, 1014–1015 (9th Cir. 2014). Here, there is objective medical evidence of an underlying impairment, which could reasonably be expected to produce the pain or other symptoms alleged, in the form of MRI and CT scan results showing brain damage due to strokes. There is also no evidence or suggestion of malingering. Accordingly, the Court must determine whether the ALJ's reasons for rejecting Plaintiff's testimony about the severity of his symptoms are supported by specific, clear and convincing reasons.

The ALJ provided the following reasons for discounting Plaintiff's description of the severity of his symptoms:

> The claimant has described daily activities which are not limited to the extent one would expect given the complaints of disabling symptoms and limitations. The record reflects the claimant is able to prepare meals twice a day; use the microwave; attend to his personal care independently; watch television for eight hours; read on his Kindle; use the computer; use a cell phone; send text messages; ride a stationary bike for one hour; go fishing with a friend; feed the dogs and cats; clean the kennel every day; do light household chores such as sweeping mopping, doing dishes, carrying the laundry, and taking out the garbage; go out every couple of days to the grocery store or video store; count change; and present for doctors' appointments each month (Exhibits 2E, 6E, 8E, 9E, 11E, 18F, and Hearing Testimony). The undersigned finds the claimant's ability to participate in such activities diminishes the credibility of the claimant's alleged functional limitations.
>
> There is evidence that the claimant has not been entirely compliant in taking prescribed medications and treatment recommendations. For example, the claimant reported to his doctors that he was not compliance with his hypertension medications (Exhibit 1F/24-25 and 5F/37-38). In addition, he testified that he did no regularly test his blood sugar levels (Hearing Testimony). Furthermore, despite his doctors' recommendations, the claimant did not exercise regularly (Exhibit 22F/3). This suggests that the symptoms may not have been as limiting as the claimant has alleged in connection with this application.

> Furthermore, despite the claimant's allegations of disabling mental health symptoms, the treatment records reflect the claimant's mental health treatment was limited. With the exception of taking psychotropic medications prescribed by his primary care physician, the claimant generally did not participate in or require additional mental health treatment.

(AR 22).

The issue of daily living activities was addressed above. Again, the ALJ does not point to an activity that Plaintiff does that is inconsistent with a limitation he alleges. Instead, the ALJ merely lists many activities and says they are more than one would expect with Plaintiff's level of disability. Moreover, the ALJ again errs or misrepresents many of these activities. As described above, Plaintiff and his wife said he no longer fishes. Plaintiff testified that his meal preparation is substantially impaired because "I get all confused." (AR 52). As for reading on the kindle, Plaintiff testified "I wouldn't have to buy a Kindle book in a long time because with the memory every time I go back to read a book it's a brand new book to me . . . . they'll say well, you know you read that a couple of weeks ago. It's like a brand new story to me." (AR 54). Plaintiff testified he had a home computer, not that he uses it. (AR 55). The Court specifically takes issue with the ALJ's discussion of Plaintiff's attendance at doctor's appointments. Clearly, going to a doctor does not demonstrate an exaggeration of symptoms. In sum, Plaintiff's purported activities, as he actually described them, do not contradict his statements about his limitations and are not clear and convincing reasons for discrediting his description of his symptoms.

The ALJs reference to lack of full compliance with medications is also not a clear and convincing reason to discredit Plaintiff's testimony in this context. The two citations demonstrate that, at the onset of the first stroke, Plaintiff admitted that he was not fully compliant with his hypertension medication. (AR 302). Then, during a check-up, he indicated that he had "ran out of his medication for blood pressure," indicating that he had been taking his medication. (AR 431). As was discussed at oral argument, there is no evidence that any medication was available, not to mention underused, to help Plaintiff's primary complaints of lack of memory and balance. And it appears that he took his medication following the stroke, as shown by running out of that medication later. At the hearing, he testified, "my wife fills up one of those mediation things. . . . She has to call me and tell me to take my medicine. I don't remember to take my medicine. . . . I

take it four times a day." (AR 47). These two references thus fall far short of a clear and convincing reason to doubt Plaintiff's symptoms.

Finally, the lack of additional mental health treatment is not a reason to discount Plaintiff's testimony about his symptoms. Plaintiff explained that "I've seen a psychologist through Golden Valley a couple of times and it didn't seem to really help." (AR 53). No one appears to suggest that additional mental health treatment would have helped, especially for the critical areas of memory and balance. Social Security Ruling 82-59 ("if despite such opinion SSA determines that ability to engage in SGA may not reasonably be expected to be restored, there is no issue of failure to follow prescribed treatment.").

In conclusion, ALJ's reasons for rejecting Plaintiff's testimony about the severity of his symptoms are not supported by specific, clear and convincing reasons.

### IV. Award of Benefits

The Ninth Circuit has stated:

> Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, we credit that opinion "as a matter of law." *Hammock v. Bowen,* 879 F.2d 498, 502 (9th Cir.1989); *see also Pitzer,* 908 F.2d at 506 (remanding for payment of benefits where Secretary did not provide adequate reasons for disregarding examining physician's opinion). Similarly, where the ALJ improperly rejects the claimant's testimony regarding his limitations, and the claimant would be disabled if his testimony were credited, "we will not remand solely to allow the ALJ to make specific findings regarding that testimony." *Varney v. Secretary of Health and Human Services,* 859 F.2d 1396, 1401 (9th Cir.1988) (*Varney II* ). Rather, that testimony is also credited as a matter of law. *Id.*

*Lester v. Chater,* 81 F.3d 821, 834, (9th Cir. 1995), *as amended* (Apr. 9, 1996); *see also* Garrison, 759 F.3d at 1019 ("[W]here there are no outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits if the claimant's excess pain testimony were credited, we will not remand solely to allow the ALJ to make specific findings regarding that testimony. Rather, we will . . . take that testimony to be established as true.").

Here, Plaintiff would be disabled if the limitations provided by his treating physician and

10

himself are credited as true. As discussed at oral argument, the parties agree that, due to Plaintiff's age, he would be deemed disabled if limited to sedentary level work. 20 C.F.R. § 404 Rule 201.00 *et seq.* Sedentary work is defined, in part, as "work [] involving lifting no more than 10 pounds at a time . . . ." SSR 83-10. Both Plaintiff's treating physician and Plaintiff himself testified to this limitation. (AR 227, 507). Thus, the Court finds that Plaintiff is disabled and is entitled to an award of benefits.[1]

Before finalizing such a decision, the Court also reviews the record as a whole to determine whether there is serious doubt as to whether the claimant is, in fact disabled. *Garrison*, 759 F.3d at 1021("[W]hen we conclude that a claimant is otherwise entitled to an immediate award of benefits under the credit-as-true analysis, *Connett* allows flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act."). The Court does not have such serious doubt here. Again, it is undisputed that Plaintiff suffered from multiple strokes. There are multiple reports of brain imaging that reflect brain damage, and the ALJ summarized these in his findings. (AR 19) ("[C]laimant was admitted to the Emergency Department in April and June 2012 for treatment of Cerebro-Vascular Accidents (CVA) and resulting pontine hemorrhage . . . Imaging studies of the claimant's brain revealed numerous pontine and hemispheric infarcts with an atypical pattern of gradient susceptibility and hemorrhage . . . ."). Plaintiff stopped working immediately after his first stroke. The ALJ found multiple severe impairments, including Cerebro-Vascular Accidents, which is associated with brain damage due to the strokes, and chronic kidney disease stage III. (AR 15). The ALJ also found "Moderate difficulties with regard to concentration, persistence or pace." (AR 17). The ALJ noted that a consultative psychological examination revealed that "the claimant's ability to learn and recall new information was in the impaired range." (AR 22). Based on the record, the Court does not find that there is a serious doubt as to whether Plaintiff is in fact disabled. Therefore, based on

---

[1] Given this conclusion, the Court need not reach the effect of other limitations testified to by Plaintiff and his treating physician, including memory loss. The Court also need not reach the other two challenges raised by Plaintiff, i.e., that the ALJ improperly disregarded the testimony of the third party, Plaintiff's wife, and also erred in its step 5 findings even given the ALJ's RFC.

11

crediting the treating physician and Plaintiff's own testimony regarding his symptoms and limitations, the Court finds the Plaintiff is disabled and entitled to award of benefits.

**V.  Conclusion**

Accordingly, the Court GRANTS Plaintiff's appeal from the administrative decision of the Commissioner of Social Security and REMANDS the case to the Social Security Administration for calculation and award of benefits. The Clerk of the Court is DIRECTED to enter judgment in favor of Plaintiff and against Defendant Commissioner of Social Security.

IT IS SO ORDERED.

Dated:  **February 1, 2018**        /s/ Eric P. Gross
                                          UNITED STATES MAGISTRATE JUDGE